STATE OF CONNECTICUT *v.* LENORIS STARKS
(AC 24666)

Flynn, DiPentima and Harper, Js.*

---

[11] The guardian ad litem sought, and was granted, permission to participate in oral argument before this court.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 12—officially released March 14, 2006

*Jennifer Vickery*, special public defender, for the appellant (defendant).

*Michele C. Lukban,* senior assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *Anthony Bochicchio,* assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. In this appeal, the defendant, Lenoris Starks, challenges the denial of his motion to suppress, which was heard and decided during his jury trial. After that trial, the defendant was convicted of possession of a hallucinogenic substance in violation of General Statutes § 21a-279 (b), possession of a hallucinogenic substance with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of a hallucinogenic substance with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b), possession of less than four ounces of marijuana in violation of General Statutes § 21a-279 (c) and possession of marijuana with intent to sell in violation of General Statutes § 21a-277 (b). He appeals from the judgment rendered on that conviction.

On appeal, the defendant claims that the trial court improperly denied his motion to suppress because the police officers (1) lacked reasonable suspicion to frisk him, and (2) lacked probable cause to search and seize the object in his watch pocket. We affirm the judgment of the trial court.

The court made the following findings in denying the motion to suppress.[1] On January 31, 2003, the special investigations division of the Danbury police department had a warrant to search both the person of Andrew Murray and his residence at 4 Willow Street in Danbury in connection with a drug investigation. James Hicks

[1] We note that although the testimony pertinent to the motion was heard by the jury, the motion was argued and ruled on outside the presence of the jury.

and James Fisher, detectives with the Danbury police department, conducted surveillance on Murray's residence from a commercial parking lot across the street for approximately fifteen to twenty minutes. Both detectives saw the defendant in Murray's yard. Hicks indicated that he knew the defendant from prior investigations.

During the surveillance, Hicks saw a number of cars drive to the front of the residence, make quick stops and then drive away. As the court stated, "at one point, after Hicks and Fisher had left and then returned in a vehicle, they saw the defendant make some sort of exchange with a person who had parked his vehicle, gotten out and had a transaction of some type with the defendant."

Later, the defendant got into his vehicle, along with Murray, who sat in the passenger seat. As the defendant drove away from the residence, other officers involved in the execution of the warrants on Murray and Murray's residence blocked the defendant by positioning their vehicle in front of the defendant's path. Michael Sturdevant, an officer with the Danbury police department, was in uniform when he got out of an unmarked police vehicle and yelled, "Stop. Police."[2] The defendant stopped his vehicle and began to back it up.[3] Another

[2] The court also found that Sturdevant knew the defendant from a prior violent encounter with the police, specifically from an incident during which the defendant had been arrested for assault on or interfering with a police officer.

[3] On appeal, the defendant argues that the court improperly found, for the purpose of concluding that probable cause existed to search further, that he had attempted to back up after Sturdevant identified himself as a police officer. We first note that the defendant attacks this factual finding only in his claim that the court improperly concluded that probable cause existed to search the defendant's person further for contraband; the defendant does not attack this factual finding as part of his initial claim that the court improperly concluded that the police had a reasonable and articulable suspicion to conduct a patdown. The court did not rely on whether the defendant backed up after Sturdevant identified himself as a police officer in concluding that probable cause existed for the further search of the

police vehicle blocked the defendant's vehicle from behind.

After the defendant stopped his vehicle and got out of his car, Sturdevant handcuffed him and performed a patdown. Sturdevant performed an open hand patdown, during which he felt a hard object in the defendant's watch pocket. The court found that Sturdevant "has been involved in literally thousands of patdowns and been involved in drug arrests in the past." On the basis of his training and experience, Sturdevant immediately recognized the object as contraband. He removed the object from the defendant's watch pocket.[4]

On the basis of those findings, the court concluded that the police had a reasonable and articulable suspicion that the defendant was involved in criminal activity and that it was proper for them to perform a limited patdown. Further, the court concluded that Sturdevant, in light of his training and experience, had probable cause to seize the contraband from the defendant's watch pocket. The defendant claims that these conclusions were improper. We disagree.

We first set forth our standard of review. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . ." (Internal quotation marks omitted.) *State* v. *Hernandez*, 87 Conn. App. 464, 469, 867

defendant. Rather, the court used this fact as a part of the totality of the circumstances that gave rise to a reasonable and articulable suspicion to perform the initial patdown of the defendant. Additionally, any testimony possibly contradicting Sturdevant's testimony that the defendant backed up after the officer identified himself as a police officer was not before the court when it ruled on the motion to suppress but was educed following the ruling on that motion.

[4] The object later was determined to contain 3.25 grams of marijuana and ten ecstasy pills.

A.2d 30, cert. denied, 273 Conn. 920, 871 A.2d 1030 (2005). "Because a trial court's determination of the validity of a patdown search implicates a defendant's constitutional rights . . . we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . However, [w]e [will] give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 280, 764 A.2d 1251 (2001).

I

The defendant first claims that the court improperly denied his motion to suppress because the officers lacked reasonable suspicion to frisk him. "When conducting a patdown search of a suspect, the officer is limited to an investigatory search for weapons in order to ensure his or her own safety and the safety of others nearby." Id., 282; see also *Terry* v. *Ohio*, 392 U.S. 1, 29, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State* v. *Trine*, 236 Conn. 216, 223–24, 673 A.2d 1098 (1996). "The United States Supreme Court has held that police need only establish a reasonable suspicion that a suspect is armed and dangerous to justify a patdown of the suspect on a public street. . . . Accordingly, the [Supreme Court of the United States has] authorized a limited patdown search for weapons under circumstances in which a reasonably prudent officer is warranted in believing, on the basis of specific and articulable facts, that the person with whom he is dealing is armed and dangerous." (Citation omitted; internal quotation marks omitted.) *State* v. *Tuck*, 90 Conn. App. 872, 880–81, 879 A.2d 553 (2005). "Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to

and known by the police, would have had that level of suspicion. . . . In ascertaining whether reasonable suspicion existed for the patdown search, the totality of the circumstances—the whole picture—must be taken into account." (Citation omitted; internal quotation marks omitted.) *State* v. *Mann*, 271 Conn. 300, 323, 857 A.2d 329 (2004), cert. denied, 544 U.S. 949, 125 S. Ct. 1711, 161 L. Ed. 2d 527 (2005).

The defendant claims that the officers' stated concerns about safety were *not supported by the record*. The record reflects, however, that the court found that Sturdevant knew the defendant previously had been involved in some type of altercation with police, that Hicks and Fisher saw the defendant engage in a transaction with an unidentified person, that the defendant was in an area under surveillance and subject to a warrant for drug dealing, that there is a nexus between drugs and weapons and that the defendant attempted to back up his car when stopped by police. On the basis of these findings, the court concluded that Sturdevant had a reasonable and articulable suspicion to pat down the defendant.

While it is true that presence in an area known to have drug activity alone is not sufficient to form reasonable suspicion to conduct a patdown, presence in such an area is a factor to be considered in determining reasonable suspicion. *State* v. *Clark*, supra, 255 Conn. 284 ("[t]his known connection between drugs and guns, coupled with the surrounding circumstances, satisfies the reasonable suspicion standard set forth in *Terry* v. *Ohio*, supra, 392 U.S. 27"). The record reveals that the court used the defendant's presence in an area known to have drug activity as only one of the factors to find a reasonable suspicion under the totality of the circumstances.

The defendant further claims that Sturdevant's real rationale for conducting the patdown was the police

department's policy of routinely frisking all third parties present when a warrant is served.[5] Because the test for reasonable suspicion is an objective test based on the totality of the circumstances; *State* v. *Mann*, supra, 271 Conn. 323; any subjective intent of Sturdevant is irrelevant to the analysis of whether reasonable suspicion existed to pat down the defendant. On the basis of the totality of the circumstances, we agree with the court's conclusion that Sturdevant had reasonable suspicion to conduct a patdown of the defendant. Accordingly, the defendant's first claim fails.

## II

The defendant next argues that the court improperly denied his motion to suppress because the officers lacked probable cause to search the defendant further by searching inside his watch pocket. "Under [*Minnesota* v. *Dickerson*, 508 U.S. 366, 375–76, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993)], a police officer acting without a warrant may seize contraband that the officer has detected through the sense of touch during a lawful patdown search. . . . Specifically, the United States Supreme Court held that, [i]f a police officer lawfully pats down a suspect's outer clothing and feels an object

---

[5] The defendant argues that the police searched him because he was in a vehicle with an individual for whom the police had a search warrant. He argues that, in considering whether this was a proper basis on which to conduct a search of the defendant, this court should not adopt the reasoning of the United States Court of Appeals for the Ninth Circuit in *United States* v. *Berryhill*, 445 F.2d 1189, 1193 (9th Cir. 1971), which suggested that it would be permissible to conduct an automatic frisk of the companion of a lawfully arrested individual for the sole purpose of determining whether that companion had weapons. We note, in the first instance, that *Berryhill* did not address whether any fruits of that search could be introduced as substantive evidence against the subject of the search. Furthermore, we need not reach this issue or decide whether Connecticut should adopt the *Berryhill* rule because, in this case, sufficient evidence existed for the police to have a reasonable and articulable suspicion to search the defendant.

whose contour or mass makes its identity *immediately apparent,* there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Clark,* supra, 255 Conn. 287–88.

The defendant argues that because the court improperly found that the defendant attempted to drive away after the police emerged from their unmarked vehicle, the court likewise improperly concluded that probable cause existed for searching the defendant. The court concluded, however, that probable cause existed to seize the contraband because, on the basis of his training and experience in performing patdowns, Sturdevant recognized the object he felt in the defendant's watch pocket as marijuana. Whether the defendant backed up before or after the police emerged from their unmarked vehicle was not a consideration in the court's determination that probable cause existed to seize the contraband found in the defendant's watch pocket. See footnote 3.

The defendant also argues that proximity to the subject of a warrant is insufficient to find probable cause. Again, and for similar reasons, we are not persuaded. The court did not articulate this as a basis for its finding of probable cause, but relied on Sturdevant's training and experience to support such a finding. This basis, as previously noted, is sufficient as a matter of law. See *State* v. *Clark,* supra, 255 Conn. 287–88.

The judgment is affirmed.

In this opinion the other judges concurred.